The next case is People v. Hall, 5-17-0179. Good morning, Your Honors. Good morning. And for the court, counsel, I'm Paige Straughn, and I represent William Russell Hall in this case. This is a recovery petition and appeal from the denial of his recovery petition alleging that he is no longer a sexually dangerous person. And I raise two points in this case, and they're basically pretty straightforward, just as a little background on the SDP program itself. A person is committed to the Department of Corrections as a sexually dangerous person, usually upon a second charge, second or third or fourth charge to some sex-related offense. The state will choose, rather than to proceed on a criminal charge, that they will file a sexually dangerous person's petition instead. First, I think the reason is because then they can be committed for a much longer time, because quite often they are fairly minor sex offenses that lead to this. But in any event, then the defendant is... Is there a minor sex offense? You're right, that's right. That's lesser significance than there are far, far worse things. Quite often the charges are... That one's a brown one. Yes, so maybe a class three as opposed to a class X, and then they would proceed on an SDP petition instead. The defendant is evaluated to see if he meets the criteria, and then generally a trial is held to determine if he is in fact a sexually dangerous person. In this case, Mr. Hall admitted the petition. He did not take this to trial. He acknowledged he had the problem. He stipulated to the findings of the evaluators, and off he went in about 2002. In 2016, he files a petition alleging that he is no longer a sexually dangerous person. We had a trial in 2017. The burden of the state at that trial is to prove a clear and convincing evidence that Mr. Hall is still sexually dangerous. So what is sexually dangerous? A sexually dangerous person is someone who has a mental disorder, either congenital or acquired, that affects his ability to control himself. Or in other words, that mental disorder causes him to have criminal propensities. Then he has actually, in fact, acted on those in the past, and then he is substantially probable to commit further acts of sexual misconduct. Those are the four elements. So in this case, we have- He filed his petition pro se to be released? Yes, in 2016. And that's typically how it happens. And then an evaluation is done. And then the state retained two experts, Clouch and Young? Heather Young is a treatment provider. She is not an expert. Dr. Clouch is one you hear his name a lot in these cases. He works for Wexford. He does these evaluations as a self-contractor. He's an amazingly brilliant man. I mean, he's remarkable to watch testify. He absolutely has like- He can remember anything that ever happened that he ever read about an inmate. It's remarkable. It doesn't mean his opinions are always right. In this case, he found that Mr. Hall still suffered from pedophilic disorder, which was what his original diagnosis was. The history of Mr. Hall was, even as young as 13 or 14, he was fondling younger girls. Those acts do not qualify as an act to support a pedophilia diagnosis because you have to be more than 16 to be diagnosed as having pedophilic disorder. Unfortunately, Mr. Hall just kept it up. He fondled people. He did ultimately sexually penetrate a child. He did do that. He did have a conviction for child pornography. It was his original conviction in 1999. He was put on probation for 30 months. And then in 2000- No, maybe it was 1997. 1999, the petition revoked his file, and they put him on some more probation for 30 months. Then he committed an act, and that's what was the initial petition here. So he's been committed from 2002 or thereabouts until 2016 when he filed his petition. He's working the program, which is a four-phase program. The first phase is orientation. Phase two is like the beginning of sex offender treatment. Phase three is where you're understanding and applying the principles. And phase four is time for discharge. At the time of trial, Mr. Hall was in phase two. So it is the state's job to prove that he has pedophilia, that he has this at the time. Dr. Clownish testifies that once you've got it, you've always got it. One thing you can do is learn to control it. That's what sex offender treatment is all about. The problem is, at trial, they presented absolutely no evidence that Mr. Hall has any sexual urges, fantasies, or troubling thoughts regarding children. That's one way that you can be diagnosed with pedophilia. He hasn't committed any acts against children. And to be fair, there aren't any children at Big Money. There are, however, publications, happens all the time, that these inmates are caught with child pornography or a Sears catalog that they now say is pornography because it happens to be at the SDB program. They still make a Sears catalog? No, they don't. I find them to be in trouble with religious documents that have pictures of children. So that's pornography if you're at Big Money. Mr. Hall's never had any of that. No, not a single time. Not in 14 years has he had any sort of violations. He's not gotten a ticket for inappropriate possessions. He's not watching inappropriate TV shows. And he has told Dr. Clownish that he no longer has those fantasies about children. So where's your basis to find that he still has pedophilia, other than once you've got it, you've always got it? In this case, everybody got distracted by the fact that Mr. Hall has moved his love interest onto the treatment providers. Not a good choice. Not something that they recommend and they're against it. Totally understandable. But the most important thing about a treatment provider is they're adults. So that suggests he's shifted his interest from pedophilia to adult women. The next most important thing about that is he's never done a single thing about it. He fantasizes in his head. He admits it because it's part of his homework and he's required to acknowledge everything that he is thinking sexually. And he does. He's acknowledged it and it's been dealt with. He seems to have developed a crush on one treatment provider who was leaving. That sent him into some sort of suicidal spiral and it was a terrible situation. But the important thing to take away from that, she's an adult. So you're asking us to reverse a jury verdict? Yeah. Yeah. I'm asking you to reverse the jury verdict because the initial diagnosis that Dr. Koch testified to is not supported by any evidence in the record. Not a single thing. Other than that 16 years ago he had pedophilia. And was the jury instructed on that? They were just instructed generally and asked for reasonable doubt as to what the elements were. But, I mean, were they instructed as to pedophilia and what the elements of that are? Yes. I believe they were. I'm sure they were instructed about it. So they have the right to reject the diagnosis as you're asking us to reject it? Yes. Technically they would have had that right. I don't have to remind all of you how heated these cases are and how difficult it is. It's not a car theft. It's not a shoplifting. It's difficult for jurors. It's difficult to get jurors. Especially if he's now admitting that he likes older women as opposed to younger women. Yes. He likes the ladies. He likes the adult ladies. An interesting thing that Dr. Clouch did say about when asked directly, what is the appropriate place for his attraction in the setting in which he resides? Well, there isn't one. This treatment program is designed to get exactly the result that we've gotten with Mr. Hoff. And that's my second point. Even though Dr. Clouch testified he wants to see him acknowledge why he does what he does, acknowledge his cycle, his deviant thoughts, manage his arousal, develop interventions, because nobody's ever going to stop the thoughts that go on in their heads. They just have to learn to manage them. And that is a successful treatment. Dr. Clouch says describe what he wanted to see, and so did Heather Young. Describe what she wanted to see, and Mr. Holland's done those things. The fact that his biggest problem he's got now is that he has a crush on his treatment provider is a sign that this program is working. It's working. He's redirected his interest to the most appropriate outlet that he has, and most importantly, he's not acted on it. And that's what this is all about. So not only is there no underlying diagnosis to support this conviction, no evidence to support the diagnosis, even though Dr. Clouch believes that he has not made enough progress so that he is no longer substantially probable to commit these offenses in the future, Mr. Holland has actually shown all of those things that Dr. Clouch wants to see in treatment. Even Heather Young admitted he had made amazing progress. First she would say he doesn't understand the concepts, but when presented with the homework that showed he did, she acknowledged, well, yes, you did seem to understand them, he just doesn't apply them. It was very much move the ball. Whenever he would accomplish one thing, now all of a sudden he's short somewhere else. Rather than just taking as gospel their work without looking at why they're reaching those conclusions, it serves no purpose to even take this to a jury if that's what we're going to do. We're asking for a rubber stamp if we don't look more deeply. It's hard for jurors to do that. It's not as hard for your honors to separate the emotion from what the law says. And that's what we're asking you to do here. Look at the law, look at what the actual evidence was, and we'd ask that you would find if they did not prove by clear and convincing evidence that he is substantially probable to commit sexual acts in the future. Thank you. Thank you. Time for a rebuttal. Counselor. Good morning, Your Honors. Counselor. May it please the court, Assistant Attorney General Garson Fisher for the people. Your Honors, people do have to show by clear and convincing evidence that a sexually dangerous person remains a sexually dangerous person when they file a discharge petition pursuant to Section 9. But this court can only overturn the jury's determination of the state meeting their burden if that determination is against the manifest weight of the evidence. Here, the uncontested testimony at the hearing is that defendant suffers from pedophilic disorder. And the uncontested testimony at the hearing was that the understanding of that disorder at this time is that when someone has it, it doesn't go away. The deviant arousal and thoughts that are associated with pedophilia cannot be cured. They don't go away with time. That does not mean that a sexually dangerous person is condemned to a lifetime of treatment in a secure treatment facility because they can, with a sex offender-specific program, learn to control those urges. And this respondent has made some progress. But the uncontested testimony at the hearing was also that this respondent has not made sufficient progress to avoid a substantial risk of reoffending should he have to operate outside of the secure detention facility at Big Muddy. He has begun to understand what his deviant thoughts are. And he has shown, according to the testimony of both the state Section 9 expert and his care provider at Big Muddy, a very preliminary understanding of what his deviant cycle is. Let me just interrupt you for a moment because I don't want you to think that you've been disrespected. But we have had a judge leave, and I don't know if you've been here before, but everything is being recorded and is available to the public even. But Justice Moore will be listening after this is all over. I understand, Your Honor. Okay. I just didn't want you to think otherwise. It's not my first argument. Not my first argument in the court. I'm sorry to interrupt. All right. Sorry to interrupt. No, not at all, Your Honor. What this respondent has not done is been able to identify sufficient interventions to prevent a substantial probability of reoffending outside of the secure detention facility. Does he have to show that he won't reoffend as to children, or does he have to show he won't reoffend generally? Actually, whose burden is that? The state's burden to prove a substantial probability that he will reoffend. That he will reoffend. A substantial probability, yes, Your Honor. But is that as to children, or is that as to sexual offenses generally? Well, based on the language of the statute, it would be sexual assault or sexual molestation of children. Because we know that he shifted his sights on to older people, women, older women. I hate to use the term older women because, of course, I am an older woman. Adult women. What we know is that he has had, according to the testimony of his care provider and the Section 9 expert, inappropriate sexual attractions towards adult women in big money. That doesn't mean that he has shifted his inappropriate attractions. Dr. Planchin, reaching his conclusion that he suffers from pedophilia, in addition to reviewing records, also conducted a two-hour interview with a respondent reaching his conclusion. He did display, additionally, inappropriate attraction towards adult females at big money, his care providers. But I'm wondering the relevancy of that. Well, there is some relevance in that, as Dr. Young, or excuse me, his care provider, Henrietta Young, testified. It demonstrates that he inappropriately believes that any time a female is nice to him, that it indicates sexual attraction to him. And she also testified that in group therapy, he was able to recognize or identify those inappropriate thoughts, but when challenged on their appropriateness, wasn't willing to accept any of the pushback or feedback from group on its inappropriateness. I will say I don't think that it is a major weight on the state side of the scale. There is, as I said, the Section 9 expert, as well as his care provider, undisputed testimony regarding each of the elements that the state has to prove, which is supported by actuarial risk assessments, which showed that the respondent was three times more likely than the average sex offender to be offended in an unsecure setting. This is just one more small weight on the state side of the scale. And when confronted with all of these pieces of evidence, I don't think the state could say that the jury's conclusion that the state had met its burden of showing by convincing evidence the respondent was still a sexually damaged person was against the manifest weight of all of these pieces of evidence. Unless your honors have any further questions, people ask that this court affirm the judgment in the circuit court. Thank you, your honors. Counsel. Just very, very quickly. Counsel pointed out that Dr. Clouch met with Mr. Hall for some time to interview him in doing his evaluation. That's part and parcel of doing these evaluations. Yet nothing in that evaluation or in that conversation made its way into evidence about Mr. Hall's interest in children other than a single statement that he denies he has any. The report was not admitted into evidence? It should have been, yes. Yes, it was. It was admitted. Yes. So how can you say nothing was admitted? Oh, I mean, nothing about his interview with him directed towards Mr. Hall's interest in children. So Dr. Clouch didn't talk to him and determine that he had all this based on something Mr. Hall said. None of that. That sort of thing didn't happen. And his testimony was just that he denied that he had any of that interest. And I do think you kind of hit the nail on the head. The goal of this program is not to turn out perfectly well-adjusted, socially skilled individuals. That would be great. I know a lot of people that need that. The goal of this program is to address what got in there, and that is he could not control himself when it came to young girls. We have no reason to believe that he has that problem now, and his interest is now in adult women, and he's controlling that. And the only time it is an issue is as part of his treatment that he has willfully participated in for all of these years, and that he's required to. I'm sorry. The ability to control with adult women, although it's a minor piece, in group therapy he did push back on that. I mean, he wouldn't accept responsibility for that. He really can't act out on it and make money. Well, you'd be surprised. He also could, and I'm sure it would be with women. One of his problems before was he stalled girls. He almost seems as if he was somewhat developmentally arrested at a very young age is how he comes across to me. We don't have that here. He wrote in his homework that he was struggling with a provider leaving and he couldn't go on without her. Well, he's not sending her notes to that effect. He's not hanging around outside of the office, which is an option. He wasn't doing any of those things that anybody presented any evidence on. So he's controlling it to the extent. He didn't have an option to hang around her office while he was in a secure facility. She works in the secure facility and maintains an office there. So she's still there. Oh, yeah. Just not with him. Correct. I see. And she teaches, this is an interesting point, she teaches the relapse prevention group, which is a high-level group. That's like in the level three sort of thing. Why not put her on then? Why didn't he put her on to talk about his... Because she didn't like it either. Her opinion was it was inappropriate and we didn't need any more of that talk. That's about it. But she could have helped him, theoretically. Well, her opinion is the same, that he should not love her either, that it's inappropriate for him to love her. But that isn't as to pedophilia, and that's what I was asking. What do you think is the answer to that question? Do they have to prove by being convincing that he's no longer attracted to children or that he no longer is going to act out on sexual fantasies generally? I believe that it should be, it is intended to address his problem and his problem as children. Because you can be a sexually dangerous person and not be a child at all. You can be there with adult kids. But he got there on pedophilia, right? Right. So that's my question, is let's suppose he's sexually inappropriate with adult women now. Does that still make him a sexually dangerous person? I say not. I say not because it is purely by the nature of her relationship and being in this facility as his treatment provider that makes her inappropriate. That's the only thing that makes her inappropriate, even according to their witnesses. If she was a person on the street that he had a crush on, as long as he maintained his crush to himself and didn't stalk her and didn't touch her, no harm, no foul. That's what he's supposed to be learning. And he is. He's doing that in the facility that he's in. So if we would affirm this, what is the next stage that would happen with your client? They are allowed to file a petition every two years. It generally, this one moved really quickly. It generally takes a couple years to get to trial. But, in other words, he would continue treatment, and is there a third stage? Yes, there is a third stage, which, of course, he's only entitled to get into when these treatment providers say he can get into it. And that's a problem. And that's where I was going with the relapse prevention group. It's a high-level group. He was in it. Only like six to eight or nine people can be in that group. There's one treatment provider, and guess who it is? The woman he can't be around because he has a crush on her. So he's kicked out of that group, and he can't ever move forward unless she stops working there. So here he is. And that's an unfortunate side effect of funding and what's going on in the prisons. It's just a reality of their limitations. But it's a concern. Thank you. Thank you. Under advisement and under a decision in due course, we will take a 10-minute break. We'll be back.